```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Kevin M. Williamson,           :

    Plaintiff,              :

  v.                           :       Case No. 2:12-cv-0244

Commissioner of Social         :       JUDGE JAMES L. GRAHAM
Security,                              Magistrate Judge Kemp
                               :
    Defendant.

REPORT AND RECOMMENDATION

I.  Introduction

    Plaintiff, Kevin M. Williamson, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those applications were filed on June 11, 2007, and alleged that plaintiff became disabled on August 17, 2006.

    After initial administrative denials of his application, plaintiff was given a hearing before an Administrative Law Judge on April 21, 2010. In a decision dated July 12, 2010, the ALJ denied benefits.  That became the Commissioner's final decision on January 24, 2012, when the Appeals Council denied review.

    After plaintiff filed this case, the Commissioner filed the administrative record on May 25, 2012.  Plaintiff filed his statement of specific errors on June 26, 2012.  The Commissioner filed a response on September 5, 2012.  No reply brief has been filed, and the case is now ready to decide.

    II.  Plaintiff's Testimony at the Administrative Hearing

    Plaintiff, who was 43 years old at the time of the administrative hearing and who completed ten years of schooling in special education classes, testified as follows.  His

testimony appears at pages 36-53 of the administrative record.

Plaintiff is a roofer. He stopped working because he suffers from a seizure disorder and cannot get hired by a roofing company due to having seizures. He had a seizure while working on a roof at his last job. That happened one other time as well. He has had seven or eight seizures in total, one within the past year.

Plaintiff testified that he drinks, averaging a six-pack of beer per day. He was arrested on a DWI charge in 1994.

Plaintiff had not looked for other work since losing his job as a roofer. He said he was afraid of having a seizure while being around machinery. He is not able to read or write other than simple words. He can make change.

From a physical standpoint, plaintiff has trouble with his knees, which both had been broken in the past. He also has arthritis in his spine, centered in the lower back. He does not take pain medication, nor has he been taking seizure medication. On a daily basis, he does household chores and runs errands. He may also watch television and visit his father.

### III.  Medical and School Records

The medical and school records in this case are found beginning on page 256 of the administrative record. The pertinent records (those which relate to Listing 12.05(C)) can be summarized as follows.

It appears that plaintiff was first given an IQ test in 1973. He tested at "above EMR range" (EMR was apparently used by his school to indicate "slow learning"). (Tr. 269). Three years later, a fourth-grade school record reported actual IQ scores of 74 (verbal), 85 (performance), and 78 (full scale). (Tr. 265). At that time, plaintiff was behind grade level in reading, spelling and arithmetic. He was put on an Individualized Education Plan for the 1978-79 school year which involved special placement classes for all academic subjects. (Tr. 263). By the

time he was 16, he was in regular classes except for English and math. (Tr. 260). It also appears that he repeated the ninth grade. (Tr. 276). In 1982, he scored 67 on the non-language portion of an IQ test, but 87 on the language portion and 76 overall. (Tr. 274).

Dr. Reece, a psychologist, evaluated plaintiff in 2007 at the request of the Bureau of Disability Determination. He found that plaintiff had an adequate memory for past and recent events and had a moderate ability to do arithmetic and to abstract similarities. His concentration and persistence were "fair but very poorly sustained" and he did not follow directions well. The "clinical impression of his cognitive functioning is below average." His IQ scores fell in a range from 63 to 67; it was noted that "[p]oorly sustained concentration and persistence and sometimes slow pace lowered his scores." Despite these scores, Dr. Reece diagnosed borderline intellectual functioning rather than mild mental retardation. He rated plaintiff's GAF at 65, indicative of only a mild impairment, but found moderate impairments in plaintiff's ability to understand, remember and follow directions and to perform simple repetitive tasks. His ability to withstand the pressure of ordinary work was only mildly impaired. (Tr. 342-46).

Dr. Stailey-Steiger, a state agency reviewer, essentially adopted those findings, noting that plaintiff was "capable of performing routine tasks in settings with few changes and without strict time or production demands." (Tr. 351). Dr. Lewin, also a state agency reviewer, confirmed that assessment. (Tr. 422).

### IV. The Vocational Testimony

A vocational expert, Dr. Growick, also testified at the administrative hearing. His testimony begins at page 54 of the record. He characterized plaintiff's past work as a roofer as heavy and unskilled. Plaintiff had no other relevant work

history.

Dr. Growick was asked to assume that plaintiff could not climb ladders, ropes or scaffolds and could not work around hazardous machinery or unprotected heights and also was limited to the performance of simple repetitive tasks and to oral instructions. With those restrictions, plaintiff could not perform his past work. He could, however, do a number of unskilled medium, light or sedentary jobs such as assembly machine tender, packer, or assembler. If plaintiff could not perform even simple, repetitive tasks during 10% of the workday, he would more likely be in the sheltered work area than being able to do competitive work.

V.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 14 through 22 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured requirements for disability benefits through December 31, 2010. Next, plaintiff had not engaged in substantial gainful activity from his alleged onset date of August 17, 2006, through the date of the decision. As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including a history of seizures, borderline intellectual functioning and alcohol abuse. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform medium work except that he was precluded from the use of ladders and work at unprotected heights or around hazardous machinery. He was also limited to simple repetitive

tasks and would need oral instructions, was precluded from fast-paced or strict time limited tasks, and could tolerate occasional changes in work setting or assignment.  Adopting the vocational expert's testimony, the ALJ found that plaintiff could not do any of his past work but could perform unskilled light jobs such as machine tender, packer and assembler.  Because these jobs exist in significant numbers in the economy, the ALJ concluded that plaintiff was not entitled to benefits.

      VI. <u>Plaintiff's Statement of Specific Errors</u>

  In his statement of specific errors, plaintiff raises a single issue.  He argues that the Commissioner improperly interpreted Section 12.05(C) of the Listing of Impairments, and that the Commissioner should have found that he suffered from deficits in adaptive functioning manifesting themselves prior to age 22 - a finding which, if coupled with plaintiff's latest IQ scores and the presence of a seizure disorder, would have led to a finding of disability.  The Court generally reviews the administrative decision of a Social Security ALJ under this legal standard:

  <u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir.

-5-

1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The ALJ specifically considered whether plaintiff met the requirements of Section 12.05(C) of the Listing of Impairments. Listing 12.05(C) provides that a claimant is presumptively disabled if the plaintiff scores between 60 and 70 on a valid IQ test, has another significantly limiting impairment, and meets certain diagnostic criteria for mental retardation, particularly the manifestation of deficits in adaptive functioning prior to age 22.  In determining that plaintiff did not meet these criteria, the ALJ noted that plaintiff had scored above 70 on all three parts of his December 1976 IQ test and found that "there are no school records or other objective evidence to document that the claimant manifested lower IQ scores before age 22." (Tr. 17).  The ALJ further noted that placement in special education classes is not "automatically probative of a mentally retarded IQ" because that placement could have resulted from other reasons.  Finally, the ALJ concluded that even if plaintiff did have the requisite level of IQ test scores prior to age 22, "the record in this case also fails to document adaptive deficits, either currently or prior to age 22, as required by Listing 12.05(C)."  (Tr. 18).  That conclusion was based on the fact that "the claimant clearly has good adaptive functioning.

He cares for the home while his wife works, can prepare simple meals, drive, and he had many years of steady employment before losing his job." Id.

Plaintiff argues against this conclusion by asserting that "[t]here is ... evidence to support a finding that Mr. Williamson had significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period ...." Statement of Errors, Doc. 12, at 10. He cites to the margin of error present in IQ testing, asserting that his score of 74 on the verbal portion of the test might actually have been as low as 69, to school records indicating the need for special classes, to the fact that he was retained in both the first and ninth grades, and to comments that his intellectual development lagged behind his chronological age. Plaintiff also characterizes the ALJ's finding about his current level of adaptive functioning as "clear error," noting that under Brown v. Sec'y of HHS, 948 F.2d 268 (6th Cir. 1991), an ALJ cannot reject an otherwise valid IQ score simply on the basis that a claimant is able to function in the home and the workplace. Plaintiff argues that the ALJ's conclusion that he functions at a good adaptive level is belied by the evidence that he is almost illiterate, does not handle the family finances, and depends to a large extent on his wife for daily living activities.

It is unnecessary to address the issue of how the ALJ treated the 1974 IQ scores because, as the Commissioner candidly concedes and as the record reflects, plaintiff's 1976 IQ testing did produce one qualifying score. As the Commissioner correctly notes, however, that test score, by itself, is not enough to satisfy the Listing. Further, the ALJ's decision provided a rationale for denying benefits even if it were assumed that plaintiff had scored between 60 and 70 on an IQ test administered

before he turned 22.  That rationale was that plaintiff did not otherwise meet the definition of mental retardation because he did not have the required level of deficits in adaptive functioning either prior to age 22 or currently.  Such a finding must be made in order for this particular section of the Listing of Impairments to be satisfied, as the preamble to that section makes clear.  See, e.g., Iding v. Commissioner of Social Sec., 2011 WL 1002105 (S.D. Ohio Feb, 22, 2011), adopted and affirmed 2011 WL 1002108 (S.D. Ohio March 16, 2011), citing Brown, supra.  Thus, the determinative question is whether that finding is supported by substantial evidence in this record.

On this point, the Commissioner has the better argument.  As the Commissioner's memorandum points out, the question is not whether there is evidence which would support a finding of such deficits, but whether there is evidence which could lead a reasonable person to the opposite conclusion.  See Johnson v. Comm'r of Social Security, 652 F.3d 646, 648 (6th Cir. 2011)("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion").  Here, the Commissioner correctly points out that no one has ever diagnosed plaintiff as suffering from mental retardation; even with his low IQ scores as an adult, he was diagnosed with borderline intellectual functioning.  The mental health experts who examined him or expressed opinions about his functional capacity all concluded that he had only mild to moderate limitations in most work-related areas of functioning, with the exception of dealing with complex job instructions.  The evidence about plaintiff's activities of daily living and ability to work for a substantial number of years, while it might not justify invalidating an otherwise valid IQ test score, does relate directly to whether plaintiff can function at an adequate level.  See, e.g., West v.

Comm'r of Social Security, 240 Fed. Appx. 692, *5 (6th Cir. July 5, 2007), citing Heller v. Doe by Doe, 509 U.S. 312, 329 (1993) for the proposition that "[a]daptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills," and that the ability to work on a daily basis, to care for daily needs, to shop, and to interact with others are all consistent with the absence of deficits in adaptive functioning.

In short, plaintiff's argument amounts to a disagreement with the ALJ about how to interpret the evidence of record. There is likely enough evidence here to support a finding that plaintiff had at least some deficits in adaptive functioning prior to age 22, but the ALJ did not have to accept that evidence as determinative. Rather, the ALJ was entitled to (and required to) consider all of the evidence of record, including the evidence which weighs against a finding that plaintiff suffered from mental retardation as defined in Listing 12.05, and to make a reasonable finding that the Listing had not been satisfied. Because that is exactly what happened here, there is no basis for reversal or remand, and the Commissioner's decision denying benefits must be affirmed.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

   The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge